## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

SHAWN BONILLA, individually and in
his capacity as the personal representative
of the estate of Mario Jasso Bonilla,
deceased;

       *Plaintiff*,

v.

(1) JIM GERLACH, individually and in
    his official capacity as Jail
    Administrator of the Grady County
    Law Enforcement Center;
(2) EDWARD JIM WEIR, individually
    and in his official capacity as Grady
    County Sheriff;
(3) TURN KEY HEALTH CLINICS, LLC
    (f/k/a ESW CORRECTIONAL
    HEALTHCARE);
(4) GRADY COUNTY CRIMINAL
    JUSTICE AUTHORITY;
(5) THE BOARD OF COUNTY
    COMMISSIONERS OF GRADY
    COUNTY, OKLAHOMA (a/k/a
    GRADY COUNTY); and
(6) DOES 1-30.

       *Defendants*.

Case No. <u>CIV-23-1060-R</u>

**ATTORNEYS LIEN CLAIM**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Shawn Bonilla, individually and in his capacity as the personal representative of the estate of Mario Jasso Bonilla, deceased ("Shawn Bonilla") hereby files this Original Complaint against Defendants Jim Gerlach, individually and in his official capacity as Jail Administrator of the Grady County Law Enforcement Center ("Defendant Gerlach" or "Gerlach"); Edward Jim Weir, individually and in his official capacity as Grady County Sheriff ("Defendant Weir" or "Weir"); Turn Key Health Clinics, LLC (f/k/a ESW Correctional Healthcare) ("TurnKey"); Grady County Criminal Justice Authority ("GCCJA"); the Board of County Commissioners of Grady County, Oklahoma ("Grady County"); Does 1-20 ("Jail Guards"); and Does 21-30 ("Medical Personnel") (Jail Guards together with Medical Personnel, the "Jail Staff") (all Defendants collectively, the "Defendants").

## I.    INTRODUCTION

1.    On September 21, 2022, Shawn Bonilla's father, 71-year-old Mario Jasso Bonilla ("Mario Bonilla" or "Mario"), tragically died while in custody as a pretrial detainee at the Grady County Law Enforcement Center ("Grady County Jail" or the "Jail")—a facility with a well-known and well-documented history of deliberate indifference toward the medical needs and well-being of those in its care. Numerous inmates have died as a result of Grady County's indifference and the indifference of those tasked with maintaining, operating, and providing medical care within the Jail. Mario Bonilla is the most recent in that long line of tragic, preventable failures.

2.    Mario Bonilla's story started when he fell down a flight of concrete stairs. Mario Bonilla's hands and feet were bound in shackles and he was under the supervision

1

of Jail Staff when he fell. The Jail Staff watched this 71-year-old man fall on his hip and onto the concrete. Anyone with an elderly parent or grandparent knows the danger involved when those forces—hip + fall + concrete—collide. Yet, the Jail Staff did nothing. Mario Bonilla was returned to his cell and forced to lay there, dying slowly and painfully for ***over seven days***. Beyond their initial indifference to Mario Bonilla's fall, Jail Staff also ignored and downplayed obvious signs over the next days that Mario Bonilla needed immediate medical care, including severe bruising, jaundice, and repeated cries for help by Mario Bonilla and his cellmates. Defendants' choices to ignore these clear signs and deny Mario Bonilla basic human dignity reflect the policies, customs, and practices of the Grady County Jail. And those choices—that indifference to Mario Bonilla's obvious, emergent pain and suffering—were the moving force behind Mario Bonilla's death.

3. Mario Bonilla's son, Plaintiff Shawn Bonilla, now brings this suit against Defendants to vindicate the conscious-shocking, deliberate indifference Mario Bonilla suffered.

## II.   <u>PARTIES</u>

4. Plaintiff Shawn Bonilla is an individual and the personal representative of the estate of Mario Jasso Bonilla. Shawn Bonilla resides in Tuttle, OK.

5. Defendant Jim Gerlach is an individual and the current Administrator of the Grady County Law Enforcement Center. Defendant Gerlach resides in Oklahoma and can be served with process at: 215 N. 3rd St. Chickasha, OK 73018.

6.      Defendant Edward Jim Weir is an individual and the former Grady County Sheriff. Defendant Weir resides in Oklahoma and can be served with process at: 2087 County Rd. 1237, Tuttle, OK 73089-3111.

7.      During all relevant times Defendants Gerlach and Weir were responsible for ensuring the safety and well-being of persons detained and housed at the Grady County Jail (including Mario Bonilla), which included ensuring appropriate medical care and treatment for those in custody. Gerlach and Weir were individually responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of Grady County Jail. Gerlach and Weir were also responsible for supervising the Jail Staff in charge of monitoring and responding to Mario Bonilla's medical needs.

8.      Defendant TurnKey Health Clinics, LLC (f/k/a ESW Correctional Healthcare) is a medical staffing company based on Oklahoma City, OK. At all relevant times, TurnKey was contracted by GCCJA to fulfil the day-to-day healthcare operations at Grady County Jail. At all relevant times, TurnKey was endowed by Grady County and/or the GCCJA with powers or functions governmental in nature, such that TurnKey became an instrumentality of the government, was acting under the color of state law, and was subject to constitutional limitations. TurnKey was responsible for fulfilling healthcare functions at the Grady County Jail and was responsible for creating and implementing policies, practices and protocols that govern the provision of medical care to persons in custody at the Grady County Jail. TurnKey was also responsible for training and supervising its employees and agents who were assigned to provide medical care at Grady

3

County Jail. TurnKey's registered agent, Jesse White, can be served with process at: 900 NW 12th St., Oklahoma City, OK 73106.

9.      Defendant Grady County Criminal Justice Authority is a public trust whose sole beneficiary is Grady County. GCCJA was formed to operate the Grady County Jail, which houses a diverse range of inmates, including local inmates, federal inmates, and inmates from other states. GCCJA, as the entity responsible for operating the Jail, is responsible for ensuring the safety and well-being of persons detained and housed at the Jail, which includes ensuring appropriate medical care and treatment for those in its custody. GCCJA is also the entity responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of Grady County Jail. GCCJA can be served with process at: 215 N. 3rd St. Chickasha, OK 73018.

10.     Defendant Board of County Commissioners of Grady County, Oklahoma, represent Grady County and are the entity with the power to sue and be sued on behalf of Grady County. Grady County can be served with process at: Jill Locke, Grady County Clerk, Grady County Courthouse, 326 W Choctaw Avenue, Chickasha, OK 73018.

11.     Defendants Does 1-30 are currently unnamed individual defendants that Shawn Bonilla intends to name as defendants in this action after initial discovery. Collectively, Does 1-20 (the Jail Guards) represent all Jail guards, correctional officers, etc. that were on duty or physically present at the Grady County Jail at any time from

4

September 12, 2022, through September 22, 2022.[1] Collectively, Does 21-30 (the Medical Personnel) represent all physicians, nurses, physician assistants, nurse practitioners, medical providers, etc. that were on duty or physically present at the Grady County Jail at any time from September 12, 2022, through September 22, 2022.[2]

### III.   JURISDICTION AND VENUE

12.    This Court may properly exercise jurisdiction over the subject matter of this suit under 28 U.S.C. § 1331, as the case arises under the Constitution and law of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court may also properly exercise jurisdiction over the subject matter of this suit under 28 U.S.C. § 1343.

13.    This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy arising under the United States Constitution and federal law.

---

[1] A non-exhaustive list of individuals that, based on information and belief, may fit this description are as follows: Forsynth (Jail Commander); Lance (Jail Lieutenant); Carpenter (Jail Captain); Misty Tucker (Jail Correction Officer); David Nye (Jail Correctional Officer); Wiate (Jail Sergeant); Sheldon (Jail Sergeant); Maples (Jail Corporal); Pinya (Jail Corporal); Hanson (Jail Corporal); Lance (Jail Correction Officer); Wright (Jail Correction Officer);  Horton (Jail Correction Officer); Riley (Jail Correction Officer); Fuller (Jail Correction Officer); Lancey (Jail Custody Support Assistant); Lane Cade (Jail Correctional Officer); Hunter Malone (Jail Correctional Officer); Dustin Whitaker (Jail Correctional Officer); Kevin Mangus (Jail Correctional Officer); and Bailey Gamble (Jail Correctional Officer).

[2] A non-exhaustive list of individuals that, based on information and belief, may fit this description are as follows: Guinevere Sanders (Jail Nurse Manager); Megan Gable (Jail Nurse); Nikki Wilson (Jail Nurse); Stephen Wood (Jail Nurse); Samantha Solomon (Jail Nurse); and Malikai (Jail Medical Provider).

14.    This Court has personal jurisdiction over the Defendants, as they are all domiciled in the state of Oklahoma and/or municipal entities organized pursuant to the laws of Oklahoma.

15.    Defendants also have sufficient minimum contacts with the State of Oklahoma. Defendants have purposefully availed themselves of the privilege of conducting business in Oklahoma such that they are subject to suit here. Additionally, Defendants have targeted their wrongful conduct at Oklahoma. Plaintiff's claims arise out of and relate to Defendants' contacts with the State. This Court's exercise of jurisdiction is reasonable; the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

16.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Mario Bonilla was in custody at the Grady County Jail, located in Chickasha, Oklahoma, which is located in this District, and this action is about Defendants' actions and omissions with respect to Mario Bonilla while he was in custody at the Grady County Jail.

## IV.    <u>PROCEDURAL HISTORY</u>

17.    Out of an abundance of caution, Plaintiff complied with the notice and timeliness requirements of the Oklahoma Governmental Tort Claims Act, although Plaintiff does not believe the Oklahoma Governmental Tort Claims Act applies to any claims asserted herein. See Okla. Stat. tit. 51, §§ 156, 157.

## V.   FACTUAL ALLEGATIONS

18.   On June 5, 2022, Mario Bonilla (then a 70-year-old man) was arrested and booked into the Grady County Jail.

19.   Shortly after Mario Bonilla was booked, Mario Bonilla's wife, Myrna "Toni" Bonilla, brought three bottles of Mario Bonilla's sealed medications to Jail Staff, including Mario Bonilla's prescribed heart medications, which Mario Bonilla was supposed to take every day in order to treat his high blood pressure and atrial fibrillation.[3] Mario Bonilla was in custody at Grady County Jail for nearly four months; during that time, Jail Staff *never opened* the medications.[4]

20.   From June through September of 2022, Mario Bonilla remained confined at the Jail in pretrial detention as he attempted to join a rehabilitation program.

### A.  Mario Bonilla's Serious Injuries

21.   On or around September 13, 2022, while Mario Bonilla was walking in handcuffs and shackles at the Jail, he violently fell down several concrete stairs and suffered serious injuries, including massive bruising that ran all the way from his lower left knee to his hip and covered a significant portion of the left side of his body. The fall was recorded on the Jail's security cameras, and Jail Staff were aware of Mario Bonilla's fall

---

[3] Mario Bonilla was also prescribed an anti-depressant medication, which he also took once per day.

[4] Myrna Bonilla received Mario Bonilla's belongings from the Jail after Mario Bonilla's passing. To Myrna Bonilla's surprise, all Mario Bonilla's medications that Myrna Bonilla delivered to Jail Staff when Mario Bonilla was first booked into the Jail remained *sealed and unopened*, leading Myrna Bonilla to believe that Defendants also failed to provide Mario Bonilla with his required medications, including his prescribed heart medications.

at the time it occurred. Yet Jail Staff did absolutely ***nothing*** to render medical aid to Mr. Bonilla despite the obvious serious injuries Mr. Bonilla sustained from the fall.

### B. Defendants' Deliberate Indifference to Mario Bonilla's Serious Medical Needs

22.     Shortly after suffering the fall, Mario Bonilla's health condition began deteriorating rapidly, including on his birthday, September 15. Mario Bonilla began experiencing excruciating back pain—a fact that he repeatedly mentioned to Jail Staff, cellmates,[5] and his wife Myrna Bonilla on a call when Myrna Bonilla visited the Jail. And, as Jail Staff regularly observed, the bruising on Mario Bonilla's skin became worse and worse, and he became more and more jaundiced.

23.     Mario Bonilla laid in his cell visibly injured and writhing for several days. As Mario Bonilla's condition worsened, he and his cellmates[6] repeatedly begged the Jail Staff to provide medical treatment to address Mario Bonilla's injuries and deteriorating health condition. Mario Bonilla and his cellmates made clear to Jail Staff that Mario Bonilla was dying and was having trouble breathing, but their calls went unanswered. Mario Bonilla's cellmate even ***carried*** Mario Bonilla to the Jail's infirmary at least two times after Mario's fall to plea for help, but Jail Staff  repeatedly ignored and downplayed those pleas

---

[5] Based on information and belief, Mario Bonilla's cellmates included Thomas James Morris, Dylan Seward, Rickey Holley, and Ocean Peña.

[6] Mario Bonilla's cellmate even called Myrna Bonilla (Mario Bonilla's wife) and Shelly Bonilla (Mario's daughter) to notify them of Mario Bonilla's worsening condition and the Jail Staff's deliberate indifference to Mario Bonilla's needs.

for help. Even worse, Jail Staff outright criticized and reprimanded Mario Bonilla's cellmate for requesting medical attention on Mario Bonilla's behalf.

24.     In a final cry for help, on September 19, 2022, one of Mario Bonilla's cellmates reached out to Mario Bonilla's daughter, Shelly Bonilla, to let her know that Mario Bonilla "is having trouble breathing and feeling fatigue ***but the nurses here wont help him*** you might want to call up here and r[a]ise a lil fit about them checking on his health." (emphasis added). A screenshot of the cellmate's message to Shelly Bonilla is shown below.



25.     For days, no one at the Jail ever *attempted* to render medical aid to Mario Bonilla, despite Mario Bonilla's obvious need for immediate medical attention. It was only when Mario Bonilla was virtually dead that Jail Staff finally took action.

26.     On September 21, 2022—*eight days after his fall*—Mario Bonilla was finally sent to the Grady Memorial Hospital. But by then it was too late. Mario Bonilla had died as a result of his injuries and Defendants' deliberate, callous indifference thereto.

27.     The Grady County Jail Staff knew of and consciously disregarded excessive and substantial risks to Mario Bonilla's health and safety. Jail Staff actually observed Mario Bonilla—an elderly man in his 70s—violently fall down a flight of concrete stairs. Jail Staff also knew the fall caused severe injuries, as Mario Bonilla and his cellmates continually made Jail Staff aware of his ailing condition. Further, Jail Staff observed Mario Bonilla's injuries as he laid in his cell for ***over seven days*** becoming more and more discolored and despondent. Mario Bonilla was clearly in such a condition that even a lay person would easily recognize the need for medical attention. Yet Jail Staff never took ***any*** reasonable measures to abate the risk to Mario Bonilla's health.

28.     Defendants also failed to refer Mario Bonilla to medical personnel capable of treating his condition. If the Jail *had* provided Mario Bonilla with competent medical care, a competent medical provider would have mandated that Mario Bonilla receive immediate medical treatment for his injuries. And he would likely still be here today.

## C. Defendants' History of Deliberate Indifference

29.     Mario Bonilla's death was not the first to occur under Defendants' watch. Defendants have an infamous history of deliberate indifference to the medical needs of those in their custody. For example:

30.     In 2003, Grady County Jail inmate David W. Howell was exposed to an inmate with active, untreated tuberculosis. Howell was subsequently diagnosed with tuberculosis.[7]

31.     On or around January 14, 2012, George Bruce Rouse Jr. was found dead in his cell at the Grady County Jail.

32.     On or around May 17, 2012, Grady County Jail inmate Anthony John Mullman died after collapsing in his cell, which prompted an investigation by the Oklahoma State Bureau of Investigation.[8]

33.     In 2014, Jail staff found inmate Holli Gail Nixon alone and unresponsive in a cell at the Grady County Jail.[9]

34.     In 2017, a Grady County Jail inmate, Justin Thao, repeatedly screamed for help and told Jail staff that he was "dying." After Jail staff repeatedly ignored Mr. Thao's requests for help, Mr. Thao committed suicide.[10]

---

[7] *See Howell v. Winchester*, No. CIV-07-1443-M, 2008 WL 700954, at *1 (W.D. Okla. Mar. 13, 2008).

[8]     *See*     https://www.news9.com/story/5e34ecebe0c96e774b3605ed/investigation-launched-into-death-of-grady-county-jail-inmate (last visited Mar. 29, 2023).

[9]     *See*     https://www.chickashanews.com/news/osbi-investigating-grady-jail-death/article_494597e4-6d21-5116-98b6-694cd6958694.html (last visited Mar. 29, 2023).

[10]     *See*   https://www.news9.com/story/5e346cfb527dcf49dad6d6e7/family-sues-after-mans-death-in-grady-county-jail-releases-disturbing-video (last visited Mar. 29, 2023).

35.     On April 28, 2020, Grady County Jail inmate William Dean Brame died due to COVID-19.[11]

36.     In or around September of 2020, Grady County Jail inmate Joseph Allen Maldonado-Passage was sexually assaulted, beat, stripped naked, and tied up in a chair by Grady County Jail guards. Mr. Maldanado-Passage was also locked in a room for eight days with dried feces at the Jail.[12]

37.     On October 7, 2021, Grady County Jail inmate Miguel Dorantes had an altercation with another inmate, which lead to guards firing rubber bullets at Dorantes. The rubber bullets struck Dorantes in the head and caused severe injuries and bleeding from Dorantes' head. Dorantes then went unconscious and was slammed into a wall. After arriving at the infirmary, Grady County Jail's medical personnel (April Beard) treated Dorantes' wound with "glue" and made a statement to the effect that since Dorantes was leaving the following day, other individuals could properly treat Dorantes.[13]

38.     On January 19, 2022, Johnnie Drewery, a former Sergeant with the Grady County Jail, pleaded guilty to using unreasonable force against an inmate—brutally

---

[11]  *See*  https://www.chickashanews.com/community/grady-county-jail-inmate-died-of-covid-19/article_d39d00a2-9150-11ea-bb8d-6f15f8a567f1.html  (last visited Mar. 29, 2023).

[12]  https://nypost.com/2020/09/09/images-show-injuries-joe-exotic-says-he-suffered-in-jail-assault/ (last visited Mar. 29, 2023).

[13] *See Dorantes v. Nye*, No. CIV-22-50-D, 2022 WL 1097093, at *2 (W.D. Okla. Feb. 28, 2022), *report and recommendation adopted in part, rejected in part*, No. CIV-22-50-D, 2022 WL 1095053 (W.D. Okla. Apr. 12, 2022).

punching and kneeing him and fracturing one of his ribs—thereby violating the inmate's constitutional rights.[14]

39.     Clearly, Defendants maintained policies, customs, and practices that Defendants knew or reasonably should have known would directly cause the deliberate indifference to Mario Bonilla's serious medical needs,[15] including:

> (1) Systematically and completely failing to train and supervise regarding serious and emergency medical conditions;
>
> (2) Recklessly or with gross negligence failing to train, supervise and manage Jail Staff appropriately regarding serious and emergency medical conditions such that future misconduct was inevitable;
>
> (3) Failing to remedy the knowing disregard of excessive risks to the health or safety of inmates, including Mario Bonilla;
>
> (4) A systematic failure of medical policies and procedures;
>
> (5) A systematic failure to maintain medical policies and procedures relating to inmates that sustain obvious physical injuries (like Mr. Bonilla);
>
> (6) A systematic failure to maintain medical policies and procedures for elderly persons (like Mario Bonilla);
>
> (7) A pattern of failures to provide medical care in response to serious and obvious medical needs of inmates, including Mario Bonilla;
>
> (8) Continuing to adhere to a deficient system of care for inmates with serious medical needs, including Mario Bonilla;

---

[14] *See* https://www.justice.gov/opa/pr/grady-county-oklahoma-jail-officer-pleads-guilty-using-excessive-force (last visited Mar. 29, 2023); https://www.kswo.com/2022/01/19/former-grady-county-jail-officer-pleads-guilty-unreasonable-force-case/ (last visited Mar. 29, 2023).

[15] Moreover, there are such gross deficiencies in Defendants' policies and procedures that inmates (including Mario Bonilla) were effectively denied access to adequate medical care.

(9) A pattern of failures to provide inmates (including Mario Bonilla) with sufficient access to a physician;

(10) A pattern of failures to send inmates with obvious and emergent needs to the hospital;

(11) Failing to provide inmates (including Mario Bonilla) with needed medical care; and

(12) Failing to adequately staff medical facilities.

### D. TurnKey's History of Deliberate Indifference to Inmates

40.     TurnKey also has a gruesome history of deliberate indifference to inmates in their care.

41.     For example, in 2016, a nurse employed by TurnKey allegedly did nothing to intervene while a hallucinating man, Anthony Huff, was kept in a restraint chair at the Garfield County jail in Oklahoma for more than ***two days*** without adequate food or water. Mr. Huff ultimately died in the restraint chair.[16]

42.     In 2016, a man died in his cell after being found unconscious and covered in his own waste at the Canadian County Detention Center, which TurnKey also staffed. The Office of the Chief Medical Examiner found the man had experienced a seizure ***days*** before his death.[17]

---

[16]   *See*   https://www.oklahoman.com/story/news/politics/state/2017/08/13/oklahoma-contractor-sued-several-times-over-jail-deaths/60577974007/ (last visited Mar. 29, 2023); https://www.kosu.org/local-news/2023-02-22/sheriff-jail-health-care-provider-seek-public-money-to-increase-staff-after-two-women-died. (last visited Mar. 29, 2023).

[17]   *See*   https://www.oklahoman.com/story/news/politics/state/2017/08/13/oklahoma-contractor-sued-several-times-over-jail-deaths/60577974007/ (last visited Mar. 29, 2023).

43.    On September 30, 2016, inmate Russell Foutch died while in custody at Creek County Public Facilities Authority (staffed by TurnKey). ***Four days*** before he died, Mr. Foutch struggled to breathe. Inmates reported that it sounded as if he had fluid in his lungs. As a group, they requested that Foutch receive a medical evaluation. Upon completion of the evaluation, Foutch was told he needed an antibiotic but would not receive one because a doctor could not be contacted.  Three days before he died, Foutch lost consciousness on the floor of the jail's day room, but no one employed by the Jail or TurnKey came to assist. Foutch was observed coughing up blood, and appeared blue, with jaundiced eyes. Other inmates requested medical attention for Mr. Foutch but were ignored. Two days before he died, Foutch received one breathing treatment and was told Jail staff would come and get him for another, but that did not occur. The day before he died, Mr. Foutch's cellmate found him unconscious and purple in color on the floor of his cell. Three Jail guards came and had Foutch walk to the front of the jail while he complained of shortness of breath, difficulty breathing, and a headache. On the day of his death, Mr. Foutch again coughed up blood. After eating lunch, Foutch returned to his cell where he again lost consciousness and turned blue. Mr. Foutch was taken to a hospital, where emergency room doctors pronounced him dead within two minutes of his arrival.

44.    Another former inmate at the Muskogee County Jail, Michael Edwin Smith, is permanently paralyzed after TurnKey medical staff repeatedly ignored his cries for help for ***weeks*** and told him he was faking his condition.[18]

---

[18]    *See*   https://www.oklahoman.com/story/news/politics/state/2017/08/13/oklahoma-contractor-sued-several-times-over-jail-deaths/60577974007/ (last visited Mar. 29, 2023).

45.    On November 1, 2018, Misty Bailey, a pretrial detainee in the Ottawa County Jail (also staffed by TurnKey), began to experience severe chest pain and an elevated heart rate. Bailey also began vomiting, could not keep down food or medication, and started experiencing extreme lower back pain and severe pain when urinating. She "begged" to be taken to the hospital for two days, but prison guards and TurnKey's staff ignored her requests for medical treatment. On November 3, 2018, the weekend nurse observed that Bailey was in distress, noted her symptoms, and found that Bailey's blood pressure and heart rate were elevated. However, the weekend nurse failed to provide any medical assistance and did not request that Bailey be sent to the hospital. Bailey's condition deteriorated as the day went on; her fever increased to 103 degrees and she had a seizure. Bailey was informed by detention staff that she would be transferred to a hospital if she agreed to be financially responsible for her own medical care. After Bailey agreed, she was finally transferred to a hospital and diagnosed with a bacterial infection of the urinary tract and kidney.[19]

46.    On August 16, 2020, Tulsa County Jail inmate Michelle Ann Caddell died of cancer after her life-threatening symptoms were ignored and downplayed for nearly a ***year*** by personnel at Tulsa County Jail, which TurnKey also staffed.[20]

---

[19] *See Bailey v. Turn Key Health Clinics, LLC*, No. 20-CV-0561-CVE-SH, 2021 WL 4256086, at *1 (N.D. Okla. Sept. 17, 2021).

[20]    *See* https://news.bloomberglaw.com/us-law-week/prison-doctor-to-face-civil-rights-suit-over-cancer-death (last visited Apr. 13, 2023).

47.    In 2021, inmate Larry Eugene Price Jr. died at the Sebastian County jail (staffed by TurnKey) from dehydration and malnutrition.[21]

48.    These failures on TurnKey's behalf further demonstrate the existence of policies, customs, and practices that directly caused the deliberate indifference to Mario Bonilla's medical needs. Such policies, customs, and practices include:

(1) Systematically and completely failing to train and supervise regarding serious and emergency medical conditions;

(2) Recklessly or with gross negligence failing to train, supervise and manage Jail Staff appropriately regarding serious and emergency medical conditions such that future misconduct was inevitable;

(3) Failing to remedy the knowing disregard of excessive risks to the health or safety of inmates, including Mario Bonilla;

(4) A systematic failure of medical policies and procedures;

(5) A systematic failure to maintain medical policies and procedures relating to inmates that sustain obvious physical injuries (like Mr. Bonilla);

(6) A systematic failure to maintain medical policies and procedures for elderly persons (like Mario Bonilla);

(7) A pattern of failures to provide medical care in response to serious and obvious medical needs of inmates, including Mario Bonilla;

(8) Continuing to adhere to a deficient system of care for inmates with serious medical needs, including Mario Bonilla;

---

[21]    *See* https://katv.com/news/local/lawsuit-filed-over-arkansas-jail-inmates-malnutrition-death-larry-eugene-price-jr-dehydration-medical-mental-terroristic-threatening-sebastian-county-judge-steve-hotz-turn-key-health-clinics-llc-oklahoma-fort-smith-police-department-fspd-associated-press (last visited Apr. 6, 2023); https://www.newsweek.com/2023/01/20/starved-death-american-jail-man-who-couldnt-pay-100-bail-1773459.html (last visited Apr. 6, 2023).

(9) A pattern of failures to provide inmates (including Mario Bonilla) with sufficient access to a physician;

(10)   A pattern of failures to send inmates with obvious and emergent needs to the hospital;

(11)   Failing to provide inmates (including Mario Bonilla) with needed medical care; and

(12)   Failing to adequately staff medical facilities.

49.      Plaintiff demands that Defendants be held accountable for their deliberately indifferent conduct and conscious-shocking customs, policies and practices that were a moving force behind Mario Bonilla's tragic death and the violation of his constitutional rights.

## VI.   COUNTS

### A.  FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES (42 U.S.C. § 1983) *AGAINST JAIL STAFF IN THEIR INDIVIDUAL CAPACITIES*

50.      Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if fully set forth herein.

51.      At all times pertinent hereto, Jail Staff were acting under color of state law. Jail Staff were government employees and/or endowed by Grady County and/or the GCCJA with powers or functions governmental in nature such that they became instrumentalities of the government and subject to its constitutional limitations.

52.      Jail Staff violated Mario Bonilla's Constitutional right to receive adequate medical care.

53.     Jail Staff acted with deliberate indifference to Mario Bonilla's serious medical needs in that they knowingly disregarded excessive risks to Mario Bonilla's health or safety from the moment Mario Bonilla fell until his tragic death.

54.     Jail Staff was aware of the facts from which inferences of a substantial risk of serious harm to Mario Bonilla could be drawn from the moment Mario Bonilla fell until his tragic death, and Jail Staff actually drew those inferences.

55.     If Jail Staff had provided Mario Bonilla with medical care (which they did not), a competent medical provider would have mandated that Mario Bonilla receive immediate medical treatment for his injuries.

56.     Jail Staff knew there was a strong likelihood that Mario Bonilla was in danger of serious harm. Mario Bonilla had serious and emergent medical issues and needs that were known and obvious to Jail Staff. Mario Bonilla was clearly in such a condition that even a lay person would easily recognize the need for medical attention. It was obvious to Jail Staff that Mario Bonilla needed immediate and emergent evaluation and treatment from medical professionals, but Jail Staff denied, delayed and obstructed such services.

57.     The acts and/or omissions of indifference by Jail Staff include but are not limited to: preventing Mario Bonilla from receiving treatment; denying Mario Bonilla access to medical personnel capable of evaluating the need for treatment; delaying the provision of medical care to Mario Bonilla; failing to take reasonable measures to abate risks to Mario Bonilla's health or safety from the moment Mario Bonilla fell until his tragic death; failing to treat Mario Bonilla's serious medical health condition properly; failing to conduct appropriate medical health assessments; failing to create and implement

appropriate medical treatment plans; failing to promptly evaluate Mario Bonilla's physical health; failing to provide access to medical personnel capable of evaluating and treating his serious health needs; and failing to take precautions to prevent Mario Bonilla from further injury.

58.     As a direct and proximate result of Jail Staff's conduct and omissions, Plaintiff incurred the damages alleged herein, including damages for grief, loss of companionship, medical and burial expenses, mental and physical pain and suffering, mental and physical anguish, emotional distress, lost wages, loss of consortium, and other damages and pecuniary losses.

59.     Jail Staff's conduct involved reckless or callous indifference to Mario Bonilla's constitutional rights, in that Jail Staff acted in the face of and contrary to a perceived risk that their actions violated a constitutional right. Jail Staff were aware, or simply did not care, that there was a substantial risk that leaving Mario Bonilla unattended *over eight days* following his fall would—and was—causing him serious harm. Therefore, Plaintiff is also entitled to punitive damages.

**B. FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF THE FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES (42 U.S.C. § 1983) *AGAINST WEIR AND GERLACH IN THEIR INDIVIDUAL CAPACITIES***

60.      Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if fully set forth herein.

61.     Defendant Gerlach and Defendant Weir violated Mario Bonilla's constitutional right to receive adequate medical care.

62.     Defendant Gerlach and Defendant Weir were responsible for ensuring the safety and well-being of persons detained and housed at the Grady County Jail (including Mario Bonilla), which included ensuring appropriate medical care and treatment for those in custody.

63.     Defendant Gerlach and Defendant Weir were individually responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of Grady County Jail.

64.     Defendant Gerlach and Defendant Weir were also responsible for supervising and training the Jail Staff in charge of monitoring and responding to Mario Bonilla's medical needs.

65.     Defendant Gerlach and Defendant Weir knew or had reason to believe that Jail Staff were knowingly disregarding excessive risks to the health or safety of inmates, including Mario Bonilla.

66.     Defendant Gerlach and Defendant Weir implicitly authorized, approved, or knowingly acquiesced in Jail Staff's knowing disregard of excessive risks to the health or safety of inmates, including Mario Bonilla.

67.     Defendant Gerlach and Defendant Weir personally participated in the deliberate indifference to the serious medical needs of Grady County Jail inmates (including Mario Bonilla), in that they knowingly disregarded excessive risks to the health or safety of inmates (including Mario Bonilla).

68.     Defendant Gerlach and Defendant Weir promulgated, created, implemented or possessed responsibility for the continued operation of customs, policies or practices

21

that were a moving force for the deliberate indifference to Mario Bonilla's serious medical

needs, including but not limited to:

> (1) Systematically directing and controlling Jail Staff to knowingly disregard excessive risks to the health or safety of inmates, including Mario Bonilla;

> (2) Systematically and completely failing to train and supervise Jail Staff regarding serious and emergency medical conditions;

> (3) Recklessly or with gross negligence failing to train, supervise and manage Jail Staff appropriately regarding serious and emergency medical conditions such that future misconduct was inevitable;

> (4) Failing to remedy Jail Staff's knowing disregard of excessive risks to the health or safety of inmates, including Mario Bonilla;

> (5) A systematic failure of medical policies and procedures;

> (6) A systematic failure to maintain medical policies and procedures relating to inmates that sustain obvious physical injuries (like Mr. Bonilla);

> (7) A systematic failure to maintain medical policies and procedures for elderly persons (like Mario Bonilla);

> (8) A pattern of failures to provide medical care in response to serious and obvious medical needs of inmates, including Mario Bonilla;

> (9) Continuing to adhere to a deficient system of care for inmates with serious medical needs, including Mario Bonilla;

> (10) A pattern of failures to provide inmates (including Mario Bonilla) with sufficient access to a physician;

> (11) A pattern of failures to send inmates with obvious and emergent needs to the hospital;

> (12) Failing to provide inmates (including Mario Bonilla) with needed medical care; and

> (13) Failing to adequately staff medical facilities.

Case 5:23-cv-01060-R   Document 1   Filed 11/20/23   Page 24 of 32

69.    Defendant Gerlach and Defendant Weir knew (either through actual or constructive knowledge), or it was obvious, that these policies, practices and/or customs posed substantial risks to the health and safety of inmates like Mario Bonilla. Further, Defendant Gerlach and Defendant Weir failed to take reasonable steps to alleviate those risks and did so with deliberate indifference to inmate's serious medical needs, including Mario Bonilla's serious medical needs.

70.    Defendant Gerlach and Defendant Weir tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, knew that such conduct was unjustified and would result in violations of constitutional rights, and evinced deliberate indifference to the serious medical needs inmates, including Mario Bonilla.

71.    There is an affirmative causal link between (1) the policies, practices and/or customs described herein that Defendant Gerlach and Defendant Weir promulgated, created, implemented and/or approved; (2) the aforementioned acts of deliberate indifference by Jail Staff to Mario Bonilla's serious medical needs, health, and safety; and (3) Mario Bonilla's death and damages as alleged herein.

72.    As a direct and proximate result of Defendant Gerlach and Defendant Weir's conduct and omissions, Plaintiff incurred the damages alleged herein, including damages for grief, loss of companionship, medical and burial expenses, mental and physical pain and suffering, mental and physical anguish, emotional distress, lost wages, loss of consortium, and other damages and pecuniary losses.

73.     Defendant Gerlach and Defendant Weir's conduct involved reckless or callous indifference to Mario Bonilla's constitutional rights, in that Defendant Gerlach and Defendant Weir acted in the face of and contrary to a perceived risk that their actions violated a constitutional right. Defendant Gerlach and Defendant Weir were aware, or simply did not care, that there was a substantial risk that the policies and customs they promulgated and the practices they condoned would—and were—causing him serious harm to detainees like Mario Bonilla. Therefore, Plaintiff is also entitled to punitive damages.

### C. FAILURE TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF THE FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES (42 U.S.C. § 1983) *AGAINST DEFENDANT TURNKEY, DEFENDANT GCCJA, DEFENDANT GRADY COUNTY, DEFENDANT WEIR IN HIS OFFICIAL CAPACITY, AND DEFENDANT GERLACH IN HIS OFFICIAL CAPACITY*

74.     Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if fully set forth herein.

75.     Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir and Defendant Gerlach violated Mario Bonilla's Constitutional right to receive adequate medical care.

76.     Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir and Defendant Gerlach are "persons" for purposes of 42 U.S.C. § 1983.

77.     At all times pertinent hereto, Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir and Defendant Gerlach were acting under color of state law. Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant

Weir, and Defendant Gerlach were government employees, municipal entities, and/or endowed by Grady County and/or the GCCJA with powers or functions governmental in nature such that they became instrumentalities of the government and subject to its constitutional limitations.

78.     Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir and Defendant Gerlach were charged with implementing and assisting in developing the policies of the Jail with respect to the medical health care of inmates at the Grady County Jail and have shared responsibility to adequately train and supervise their agents and employees.

79.     Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir, and Defendant Gerlach promulgated, created, implemented, or possessed responsibility for the continued operation of customs, policies and/or practices that were a moving force for the deliberate indifference to Mario Bonilla's serious medical needs, including but not limited to:

(1) Systematically directing and controlling Jail Staff to knowingly disregard excessive risks to the health or safety of inmates, including Mario Bonilla;

(2) Systematically and completely failing to train and supervise Jail Staff regarding serious and emergency medical conditions;

(3) Recklessly or with gross negligence failing to train, supervise and manage Jail Staff appropriately regarding serious and emergency medical conditions such that future misconduct was inevitable;

(4) Failing to remedy Jail Staff's knowing disregard of excessive risks to the health or safety of inmates, including Mario Bonilla;

(5) A systematic failure of medical policies and procedures;

(6) A systematic failure to maintain medical policies and procedures relating to inmates that sustain obvious physical injuries (like Mr. Bonilla);

(7) A systematic failure to maintain medical policies and procedures for elderly persons (like Mario Bonilla);

(8) A pattern of failures to provide medical care in response to serious and obvious medical needs of inmates, including Mario Bonilla;

(9) Continuing to adhere to a deficient system of care for inmates with serious medical needs, including Mario Bonilla;

(10) A pattern of failures to provide inmates (including Mario Bonilla) with sufficient access to a physician;

(11) A pattern of failures to send inmates with obvious and emergent needs to the hospital;

(12) Failing to provide inmates (including Mario Bonilla) with needed medical care; and

(13) Failing to adequately staff medical facilities.

80.    There is an affirmative causal link between (1) the aforementioned deliberate indifference by Jail Staff to Mario Bonilla's serious medical needs, health, and safety, and the resultant violations of Mario Bonilla's constitutional rights; and (2) the above-described customs, policies, and/or practices implemented, approved, and condoned by Defendants TurnKey/GCCJA/Grady County/Weir/Gerlach.

81.    Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir and Defendant Gerlach knew (either through actual or constructive knowledge), or it was obvious, that these policies, practices and/or customs posed substantial risks to the health and safety of inmates like Mario Bonilla. Nevertheless,

Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir, and Defendant Gerlach failed to take reasonable steps to alleviate those risks in reckless disregard of and with deliberate indifference to inmates' serious medical needs, including Mario Bonilla's serious medical needs.

82.     Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir, and Defendant Gerlach tacitly encouraged, ratified, and/or approved of the unconstitutional acts and/or omissions of Jail Staff alleged herein.

83.     There is an affirmative causal link between the aforementioned customs, policies, and/or practices; the deliberate indifference by Jail Staff; and Mario Bonilla's death and damages as alleged herein.

84.     As a direct and proximate result of Defendant TurnKey, Defendant GCCJA, Defendant Grady County, Defendant Weir, and Defendant Gerlach's conduct and omissions, Plaintiff incurred the damages alleged herein, including damages for grief, loss of companionship, medical and burial expenses, mental and physical pain and suffering, mental and physical anguish, emotional distress, lost wages, loss of consortium, and other damages and pecuniary losses.

85.     Defendant TurnKey's conduct involved reckless or callous indifference to Mario Bonilla's Constitutional right, in that Defendant TurnKey acted in the face of and contrary to a perceived risk that its and its employees' actions violated detainees' constitutional rights. Defendant Turnkey was aware, or simply did not care, that there was a substantial risk that the policies and customs it promulgated and the practices it condoned

would—and were—causing serious harm to detainees like Mario Bonilla. Therefore, Plaintiff is entitled to punitive damages against Defendant Turnkey.

### D. WRONGFUL DEATH / NEGLIGENCE AGAINST TURNKEY AND GCCJA

86.     Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if fully set forth herein.

87.     Defendant TurnKey, Defendant GCCJA, and their agents and employees, owed a duty to Mario Bonilla, and all other inmates in custody, to use reasonable care to provide inmates in need of medical attention with appropriate treatment.

88.     Defendant TurnKey, Defendant GCCJA, and their agents and employees breached that duty by failing to provide Mario Bonilla with prompt and adequate medical treatment despite repeated requests and obvious need.

89.     Defendant TurnKey's, Defendant GCCJA's, and their agent's and employee's breaches of the duty of care include, among others: failure to treat Mario Bonilla's serious medical condition properly; failure to timely and appropriately respond to Mario Bonilla's medical needs; failure to conduct appropriate medical assessments; failure to create and implement appropriate medical treatment plans; failure to promptly evaluate Mario Bonilla's physical and mental health; failure to properly monitor Mario Bonilla's physical and mental health; failure to provide access to medical and mental health personnel capable of evaluating and treating his serious health needs; failure to properly train and supervise regarding serious and emergency medical conditions; failure to comply with the standards set forth by the Oklahoma Department of Health; failure to adequately

staff the Grady County Jail with competent medical professionals; and a failure to take precautions to prevent Mario Bonilla from further injury.

90.     Defendant TurnKey and Defendant GCCJA are vicariously liable for the negligence of their employees and agents.

91.     Defendant TurnKey and Defendant GCCJA are also directly liable for their own negligence.

92.     As a direct and proximate cause of Defendant TurnKey's and Defendant GCCJA's negligence, and the negligence of their agents and employees, Plaintiff incurred the damages alleged herein, including damages for grief, loss of companionship, medical and burial expenses, mental and physical pain and suffering, mental and physical anguish, emotional distress, lost wages, loss of consortium, and other damages and pecuniary losses.

93.     Defendant TurnKey's and Defendant GCCJA's conduct involved reckless or callous indifference to Mario Bonilla's rights, in that Defendant TurnKey and Defendant GCCJA acted in the face of and contrary to a perceived risk that one's actions violated detainees' rights. Defendant Turnkey and Defendant GCCJA were aware, or simply did not care, that there was a substantial risk that the policies and customs it promulgated, the practices it condoned, and the negligence and indifference of its agents and employees would—and were—causing serious harm to detainees like Mario Bonilla. Therefore, Plaintiff is also entitled to punitive damages.

## VII.     PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully prays for judgment in his favor and against Defendants, jointly and severally, as follows:

a) Damages as set out in COUNTS V.A-D, above;

b) Attorney's Fees and Cost of Litigation; and

c) Any other relief to which Plaintiff is entitled.

## VIII.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues so tribal pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully Submitted,

/s/ *Nathan B. Hall*
Bradley E. Beckworth, OBA No. 19982
Trey Duck, OBA No. 33347
Nathan Hall, OBA No. 32790
**NIX PATTERSON, LLP**
8701 BEE CAVE ROAD
BUILDING 1, SUITE 500
AUSTIN, TEXAS 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*tduck@nixlaw.com*
*nhall@nixlaw.com*

Michael Burrage, OBA No. 1350
Austin Vance, OBA No. 33294
J. Renley Dennis, OBA No. 33160
**WHITTEN BURRAGE**
512 NORTH BROADWAY AVENUE, SUITE 300

Oklahoma City, OK  73102
Telephone:    (405) 516-7800
Facsimile:    (405) 516-7859
mburrage@whittenburragelaw.com
avance@whittenburragelaw.com
jdennis@whittenburragelaw.com

***Attorneys for Plaintiff***

**ATTORNEYS LIEN CLAIMED**

**JURY TRIAL DEMANDED**