# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN BONILLA, individually and in his capacity as the personal representative of the Estate of Mario Jasso Bonilla, deceased,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>JIM GERLACH; EDWARD JIM WEIR; TURN KEY HEALTH CLINICS, LLC; GRADY COUNTY CRIMINAL JUSTICE AUTHORITY; BOARD OF COUNTY COMMISSIONERS OF GRADY COUNTY; JOHN DOES 1-30,<br><br>　　　　　　　　Defendants. | No. CIV 23-1060-R |

## ORDER

In this civil rights actions brought pursuant to 42 U.S.C. § 1983, Plaintiff, as personal representative of the estate of Mario Jasso Bonilla, alleges that Defendants violated Mr. Bonilla's Fourteenth Amendment right to receive adequate medical care while he was incarcerated as a pretrial detainee at the Grady County Law Enforcement Center. Defendants Jim Gerlach, Edward Weir, Turn Key Health Clinics, Grady County Criminal Justice Authority, and the Board of County Commissioners have each filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) [Doc. Nos. 13, 16, 17, 18]. The motions are now fully briefed and at issue [Doc. Nos. 19, 20, 21, 22, 23, 24].

## RELEVANT BACKGROUND

The Complaint alleges that Mario Bonilla violently fell down several concrete stairs during his confinement as a pretrial detainee at the Grady County jail. Compl. ¶ 21. Shortly thereafter, Mr. Bonilla started experiencing excruciating back pain, worsening bruising, and he became jaundiced. *Id.* at ¶ 22. Although jail staff observed Mr. Bonilla's fall and was repeatedly made aware of Mr. Bonilla's worsening condition, he was not provided any medical aid. *Id.* at ¶¶ 21-28. Mr. Bonilla was finally sent to the hospital eight days after his fall, but he died as a result of the injuries. *Id.* at ¶ 26. Relying on these allegations, Plaintiff contends that Defendants acted with deliberate indifference to Mr. Bonilla's serious medical needs in violation of the Fourteenth Amendment and that Defendants Grady County Criminal Justice Authority and Turn Key were negligent under state law. Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" to state a plausible claim, although it does require "more than labels and conclusions." *Twombly*, 550 U.S. at 555. All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## DISCUSSION

**A. Grady County Criminal Justice Authority's Partial Motion to Dismiss**

The Grady County Criminal Justice Authority is a public trust that was formed to operate the Grady County jail and has Grady County as its sole beneficiary. Compl. ¶ 9. The GCCJA seeks dismissal of Plaintiff's state law claim pursuant to § 155(25) of the Oklahoma Governmental Tort Claims Act, which provides that a political subdivision shall not be liable for claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility… ." Okla. Stat. tit. 51, § 155(25).

In response, Plaintiff argues that § 153.1 of the OGTCA abrogates this immunity with respect to a public trust that houses federal inmates, such as the GCCJA. The full text of § 153.1 states:

> Nothing in the Governmental Tort Claims Act shall be construed as allowing an action or recovery against this state, against any city, town or county that is the sole beneficiary of a public trust, or against any employee of this state or any city, town or county of this state due to the housing of federal inmates or inmates from another state in facilities owned or operated by private prison contractors. If a public trust that has as its sole beneficiary a city, town or county has a facility that houses federal inmates or inmates from another state, the immunity provided for in the Governmental Tort Claims Act shall not apply to that trust.

Okla. Stat. tit. 51, § 153.1. In reply, the GCCJA contends that this provision is not applicable because the second sentence of § 153.1 "obviously refers" to the immunity provided in the first sentence and not to the immunity provided by § 155(25). Neither party has pointed to any authority interpreting § 153.1 and the Court has found none.

The first sentence of § 153.1 provides that the OGTCA should not be construed as allowing an action against a county that is the sole beneficiary of a public trust due to the

3

housing of federal and out-of-state inmates in facilities operated by private prison contractors. In other words, this sentence appears to preclude a claim under the OGTCA against a county where the county is the sole beneficiary of a public trust and the claim is premised on the housing of a federal or out-of-state prisoner in a private prison facility. The second sentence then refers to "the immunity provided for in the Governmental Tort Claims Act" and indicates that it "shall not apply" to a public trust if the public trust has a county as its sole beneficiary and has a facility that houses federal or out-of-state inmates. Contrary to the GCCJA's stance, this sentence does not obviously refer to the immunity provided for in § 153.1 but instead speaks more broadly of "the immunity provided for in the Governmental Tort Claims Act." Additionally, unlike the first sentence, the second sentence makes no reference to a facility being owned or operated by a private contractor.

Plaintiff has alleged that the GCCJA is a public trust, that it houses federal inmates, and that it has a county as its sole beneficiary. Under those circumstances, § 153.1 provides that "the immunity provided for in the Governmental Tort Claims Act shall not apply to that trust." Given this language, the Court is not persuaded that dismissal of Plaintiff's state law claim against the GCCJA is warranted at this stage. The GCCJA's partial motion to dismiss is therefore denied.

### B. Motions to Dismiss filed by Defendants Gerlach, Weir, and the Board of County Commissioners of Grady County

Plaintiff asserts a claim under the Fourteenth Amendment against Defendant Gerlach (the administrator of the Grady County Jail) in his official capacity, Defendant Weir (the Grady County Sheriff at the time of the events) in his official capacity, and the

Board of County Commissioners of Grady County. Compl. ¶¶ 5-6, 10. These claims are, in effect, a claim against Grady County.[1] *Snow v. Bd. of Cnty. Comm'rs of the Cnty. of McClain*, No. CIV-14-911-HE, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) ("Moreover, in the § 1983 context, a suit against the board of county commissioners or some other county official in their official capacity is, in substance, a suit against the county.").

In seeking dismissal of these claims, Defendants do not dispute that Plaintiff has a plausible claim under § 1983 against the entity responsible for the operation of the Grady County jail. Instead, Defendants contend they are not proper parties to this action because they do not possess final policymaking authority over the jail. In their estimation, the creation of the GCCJA forecloses Grady County's liability for injuries occurring at the jail.

Defendants' argument is primarily premised on Okla. Stat. tit. 60, § 176(A), which authorizes the creation of a public trust for the accomplishment of any public function of a county; Okla. Stat. tit. § 176.1, which provides that the trust is presumed to be a separate legal entity from the county; and Okla. Stat. tit. 19, § 513.2, which provides that any duties imposed on a sheriff to operate a jail facility "shall be deemed applicable to and imposed upon the public trust." However, as other district courts have recognized, these statutes do not necessarily relieve the sheriff of his own statutorily imposed duties and liabilities with respect to the operation of a county jail. *See, e.g.*, Okla. Stat . tit. 57, § 47 ("The sheriff

---

[1] Although Plaintiff's claims against Weir in his official capacity, Gerlach in his official capacity, and the Board may be redundant, Defendants have not moved for dismissal on that basis.

shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."); *Hill v. Okmulge Cnty. Crim. Just. Auth.*, No. CIV-18-394-SPS, 2019 WL 11000375, at *2 (E.D. Okla. Apr. 18, 2019) (explaining that the defendant's authority "speaks to duties, not liability" and finding "that Oklahoma law does not preclude the Board from liability at this stage"); *Palmer v. Bd. of Cnty. Comm'rs of Sequoyah Cnty.*, No. CIV-07-012-RAW, 2007 WL 3407057, at *1 (E.D. Okla. Nov. 9, 2007) (finding "that nothing in the statutory language allowing counties to create public trusts to carry out officials' duties relieved the Sheriff of his statutory liability").

Based on the allegations in the Complaint, it is plausible that the sheriff "retained policymaking authority with regard to at least some policies and procedures at the [county jail]." *Payne v. Dep't of Corr. of Oklahoma*, No. 12-CV-0407-JHP, 2013 WL 3097172, at *4 n.2 (E.D. Okla. June 18, 2013). And, as an alleged policymaker, the sheriff's policies and customs can form the basis for liability against the county. *See Lopez v. LeMaster*, 172 F.3d 756, 763 (10th Cir. 1999)("Alternatively, the county may be liable on the basis that Sheriff LeMaster is a final policymaker with regard to its jail[.]"); *Snow*, 2014 WL 7335319, at *2 (W.D. Okla. Dec. 19, 2014) ("So if the sheriff has adopted a policy or knowingly acquiesced in a custom which becomes the moving force behind a constitutional violation, that is enough to establish county liability."). The motions to dismiss of

Defendant Gerlach in his official capacity, Defendant Weir in his official capacity, and the Board of County Commissioners of Grady County are therefore denied.[2]

### C. Turn Key's Motion to Dismiss

Defendant Turn Key is a medical staffing company contracted by the GCCJA to provide healthcare services at the Grady County jail. Compl. at ¶ 8. Plaintiff's Complaint seeks to impose liability on Turn Key under a theory of municipal liability. To succeed on this claim, Plaintiffs must demonstrate (1) a violation of Mr. Bonilla's constitutional rights and (2) that a policy or custom of Turn Key was the moving force behind the constitutional violation. *Layton v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 512 F. App'x 861, 868 (10th Cir. 2013). Turn Key argues that Plaintiff's allegations fail at both steps.

With respect to the first element, Plaintiff asserts that Turn Key employees acted with deliberate indifference to Mr. Bonilla's serious medical needs in violation of the Fourteenth Amendment. Turn Key argues that Plaintiff failed to adequately identify a specific Turn Key employee that engaged in conduct causing a constitutional violation. The Court disagrees.

The Complaint alleges that Mr. Bonilla was twice turned away from the jail infirmary after he was carried there by a cellmate and that jail nurses were not responding to his requests for assistance. Compl. ¶¶ 23-24. Thus, contrary to Defendant's argument,

---

[2] The Complaint also asserts claims against Defendants Weir and Gerlach in their individual capacities. Defendants Weir and Gerlach moved to dismiss the individual capacity claims and Plaintiff's response brief indicates that he is not pursuing those claims. Accordingly, the individual capacity claims against these defendants are dismissed without prejudice.

the Complaint adequately identifies specific Turn Key employees (the nurses and infirmary staff) and specific conduct showing deliberate indifference to serious medical needs (failing to take any action after being informed of Mr. Bonilla's deteriorating medical condition). Further, these factual allegations meaningfully distinguish Turn Key's alleged role in the constitutional violation from that of the other Defendants and give Turn Key fair notice of the conduct underlying the claim. Although Plaintiff has not conclusively identified the Turn Key employees by name, at this preliminary stage, Plaintiff's factual description of the events is sufficient to plausibly allege that specific Turn Key employees caused a violation of Mr. Bonilla's constitutional rights.

With respect to the second element of a municipal liability claim, Turn Key similarly argues that Plaintiff's allegations are too conclusory and generalized to plausibly show that a Turn Key policy or custom was the moving force behind the alleged constitutional violation. Once again, this argument is unpersuasive in light of the allegations in this case. The Complaint identifies several recent incidents where (as alleged here) an inmate at a jail staffed by Turn Key died after a request for medical assistance was ignored. Compl. ¶¶ 41-47. The Complaint also alleges that Turn Key failed to train and supervise its employees regarding responding to serious medical conditions, failed to maintain policies and procedures regarding inmates that sustain obvious physical injuries, failed to maintain policies and procedures regarding elderly inmates, engaged in a pattern of failing to provide access to a physician, and engaged in a pattern of failing to send inmates with emergent conditions to the hospital. Construing these allegations in Plaintiff's favor, he has satisfied his burden to plead facts showing that Turn Key was on notice that

its policies and customs (or lack thereof) posed significant risks to inmate health, that Turn Key consciously disregarded those risks, and that Turn Key's inaction caused a violation of Mr. Bonilla's constitutional rights.

Turn Key's final argument for dismissal focuses on Plaintiff's negligence claim brought under state law. Under § 155(25) of the OGTCA, "[a]n employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability." *Lucas*, 58 F.4th at 1147. Turn Key argues that the immunity described in this provision extends to jail healthcare contractors because the OGTCA defines "employee" as including "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates." Okla. Stat. tit. 51 § 152(7)(b)(7). Turn Key further contends that in *Barrios v. Haskell Cty. Pub. Facilities Auth*., 432 P.3d 233, 241 (Okla. 2018), the Oklahoma Supreme Court "squarely addressed" whether jail healthcare contractors are immune under the OGTCA and found that healthcare contractors like Turn Key are entitled to immunity under state law. *See* Def. Br. at 17-18.

Turn Key made this same argument in *Lucas*, 58 F.4th at 1147-48, and the Tenth Circuit found it unpersuasive. In rejecting Turn Key's argument, the Tenth Circuit explained that "*Barrios* did not find that a healthcare contractor at a jail was an employee entitled to tort immunity under the OGTCA but simply assumed the healthcare contractor was an employee for purposes of answering the certified questions before it." *Id.* at 1147-48. The Tenth Circuit then held that "[o]n a motion to dismiss, it was premature" to determine that Turn Key was "entitled to immunity based on *Barrios's* non-binding legal

9

assumption" and the "proper route in this instance without further guidance from Oklahoma courts is to determine the OGTCA's applicability to private corporations — and their employees — that contract with the state to provide medical services at the summary judgment stage if the factual record is sufficiently developed and the facts are uncontroverted." *Id.* at 1148.

The Court is not persuaded that Plaintiff's allegations conclusively establish that Turn Key is entitled to immunity under the OGTCA and, consistent with the Tenth Circuit's instruction in *Lucas*, declines to dismiss Turn Key on this ground at the pleading stage.

## CONCLUSION

As set out above, the Motion to Dismiss filed by Turn Key [Doc. No. 13], the Motion to Dismiss filed by the Board of County Commissioners and Weir [Doc. No. 16], the Motion to Dismiss filed by the Grady County Criminal Justice Authority [Doc. No. 17], and the Motion to Dismiss filed by Gerlach [Doc. No. 18] are DENIED. The individual capacity claims against Defendants Weir and Gerlach are dismissed without prejudice.

IT IS SO ORDERED this 6th day of February 2024.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE