# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

SHAWN BONILLA, individually and in his capacity as the personal representative of the Estate of Mario Jasso Bonilla, deceased,

        Plaintiff,

v.

JIM GERLACH; EDWARD JIM WEIR; TURN KEY HEALTH CLINICS, LLC; GRADY COUNTY CRIMINAL JUSTICE AUTHORITY; BOARD OF COUNTY COMMISSIONERS OF GRADY COUNTY; JOHN DOES 1-30,

        Defendants.

No. CIV-23-1060-R

## ORDER

Before the Court is Plaintiff's First Motion to Compel Discovery from Defendant Turn Key Health Clinics, LLC [Doc. No. 48]. The matter is fully briefed and at issue [Doc. Nos. 49, 50].[1]

## RELEVANT BACKGROUND

In this action brought pursuant to 42 U.S.C. § 1983, Plaintiff, as personal representative of the estate of Mario Jasso Bonilla, alleges that Defendants violated Mr. Bonilla's Fourteenth Amendment right to receive adequate medical care while he was incarcerated as a pretrial detainee at the Grady County Law Enforcement Center. With

---

[1] Turn Key's Motion for Leave [Doc. No. 51] seeking to file a sur-reply is DENIED.

respect to Defendant Turn Key specifically, Plaintiff asserts a *Monell*[2] claim alleging that Turn Key acted with deliberate indifference by maintaining policies and customs that were the moving force behind Mr. Bonilla's death. Plaintiff now moves to compel responses to several discovery requests that he claims are relevant to his *Monell* claim.

## STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The scope of discovery under this rule is broad, but it "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation omitted). When the relevance of a particular discovery request "is not readily apparent, the party seeking the discovery has the burden to show the relevance of the information requested." *Barton v. Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012). Conversely, when the discovery request appears relevant, the party resisting the request has the burden of showing that the request falls outside the scope of permissible discovery. *Id.*

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (recognizing that local government entities may be sued under § 1983 only "when execution of a government's policy or custom…inflicts the injury").

## DISCUSSION

**Request for Production Nos. 19, 20, and 21**

Plaintiff first seeks to compel responses to the following three requests for production:

> 19. All Documents pertaining to any allegation, grievance, or complaint (whether formal or informal) that any inmate/detainee was not provided with appropriate health care, including all Documents from any investigation (whether formal or informal) into such allegations, grievances, or complaints. The Relevant Time Period for this request is the time during which Defendant Turn Key has been contracted to provide services at GCLEC.
>
> 20. All Documents disclosing or describing each and every verdict entered against You and settlement paid by You, including those against and/or paid by You on behalf of Your employees, which pertain to any allegation, grievance, or complaint referenced in the previous request.
>
> 21. All mortality reviews, morbidity reports, root cause analyses, or any similar type of audits or reviews—internal or external—relating to inmate deaths in corrections facilities where Turn Key provides services in the past ten (10) years.

Plaintiff describes these requests as seeking information regarding prior similar incidents and notes that this type of evidence is a staple of *Monell* claims. In its briefing, Turn Key primarily argues that the requests are overbroad and seek irrelevant information.

The Court agrees that the requests are overbroad in that they do not contain any geographic, temporal, or descriptive limitations and do not adequately describe some of the categories of information sought. Plaintiff contends that Turn Key's professed confusion about the aim of these discovery requests is disingenuous given the lengthy and detailed meeting the parties had regarding the scope of the requests. That may be so, but

3

Plaintiff is asking the Court to compel production of the requests as currently written and, in that form, they are overbroad on their face.

Turn Key should not, however, take too much comfort from this finding because it is evident that much of the information sought by these requests is relevant. Plaintiff correctly notes that information tending to show a pre-existing pattern of tortious conduct by Turn Key is well within the scope of discovery given that Plaintiff has asserted a *Monell* claim. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Further, given the claims in this particular case, which involve allegations of systemic failures in training, supervision, and procedure, the scope of discovery into prior similar incidents will likely be broad. *See Est. of Cross v. Turn Key Health Clinics, LLC*, No. 1:22-CV-03143-SKC-SBP, 2024 WL 4444446, at *7-9 (D. Colo. Oct. 8, 2024) (compelling production of event records from plaintiff's facility and event records concerning inmates housed at other facilities who were seriously injured in ways that were similar to the plaintiff).

Ultimately, "it is the parties' obligation to frame their own discovery requests and to seek to narrow any disputes with opposing counsel" and the Court is not obligated to re-draft an overly broad discovery request. The Court will therefore deny the motion to compel as to these discovery requests without prejudice. The Court further instructs the parties to confer in a good faith effort to reasonably narrow these requests and define the categories of information sought by the requests.[3]

---

[3] Because the requests are overbroad, the Court declines to consider at this point whether Turn Key has met its burden of showing that responding to the requests imposes an undue burden. As for Turn Key's contention that these requests seek medical information of other inmates that is protected from disclosure by HIPAA, that objection is overruled. Health

4

**Request for Production Nos. 25 and 26**

In these requests, Plaintiff seeks Turn Key's "policies and procedures" and "training materials" pertaining to the provision of medical care to inmates at the Grady County Law Enforcement Center. Although Turn Key raised several boilerplate objections in their initial discovery response,[4] its briefing primarily argues that the requests are overbroad because they seek policies beyond those that were in effect at the time of Mr. Bonilla's death, including policies that post-date the incident. Plaintiff argues that subsequent policies are relevant to their *Monell* claim because changes in the policies (or a lack thereof) could show that a particular policy was feasible, that Turn Key is responsible for implementing certain policies, or that Turn Key has a pattern of failing to respond appropriately to inmate deaths at its facilities.

---

information otherwise protected by HIPAA may be disclosed during a judicial proceeding in response to a discovery request if a qualified protective order is in place. 45 C.F.R. § 164.512(e)(1)(ii). A qualified protective order is one that prohibits the parties from using or disclosing protected health information for any purpose other than the litigation and requires the return or destruction of the information at the end of the proceeding. *Id.* at § 164.512(e)(1)(v). The protective order previously entered in this case meets these requirements. *See* Doc. No. 40. Accordingly, Turn Key's objection to producing otherwise relevant information based on HIPAA is overruled, particularly given Plaintiff's representation that he is amenable to receiving de-identified health records with the identities of any potential witnesses marked as attorneys' eyes only.

[4] In evaluating whether to compel responses to Plaintiff's discovery requests, the Court considers only those objections that Turn Key urges and argues in its response brief. *See Gibson v. StoneGate Senior Living, LLC,* No. CIV-23-00290-PRW, 2024 WL 4004057, at *1 (W.D. Okla. July 8, 2024) (explaining that "[t]he party resisting a motion to compel bears the burden to support its objections" and "must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection.") (quotation omitted).

Contrary to Turn Key's argument, in some situations, post-incident conduct may be probative of the municipal entity's deliberate indifference or other relevant issues. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A subsequent cover-up might provide circumstantial evidence that the city viewed the policy as a policy in name only and routinely encouraged contrary behavior[.]"). Here, Plaintiff has met his burden of showing that his request for policies and training materials regarding the provision of medical care at the Grady County Law Enforcement Center, including those that were implemented after the incident, are relevant to certain issues in this case and therefore within the scope of permissible discovery. *See Est. of Cross*, 2024 WL 4444446, at *9 ("Moreover, this court also finds persuasive the numerous cases that Plaintiffs cite—including from this District—in which courts have ordered the production of similar, post-incident self-analysis documents as relevant to a Monell claim."); *Est. of Price v. Turn Key Health Clinics, LLC*, No. 2:23-CV-2008, 2024 WL 1482610, at *5 (W.D. Ark. Apr. 5, 2024) ("The Court agrees that changes to the policy may lead to admissible evidence concerning the Estate's *Monell* claims, such as why the changes were made."). Accordingly, Plaintiff's motion to compel with respect to these requests is granted.[5]

**Request for Production Nos. 6 and 9**

Requests 6 and 9 seek "[a]ll formal and informal reports (e.g., incident reports, morbidity and mortality ("M&M") reviews, performance evaluations, etc.) regarding the

---

[5] In its response brief, Turn Key asserts that its policies were not amended "as a result of Mr. Bonilla's death." However, given that the documents are within the scope of permissible discovery, Plaintiff is entitled to review them and evaluate for himself whether any relevant changes were made.

incident made the basis of this suit" and "[a]ll Documents and Communications reflecting or referring to any investigation into the incident which form the basis of this action." Turn Key contends that it is "presently unaware of any documents responsive to" these requests outside of Mr. Bonilla's medical records and asserts that "no written death report" was generated. However, Turn Key also objects to the request on the basis of privilege and argues that any documents or communications that occurred after it received Plaintiff's April 26, 2023 document preservation letter were generated in response to threatened litigation.

Although the Court obviously cannot compel a party to produce documents that do not exist, neither Turn Key's discovery responses nor its briefing make clear whether Turn Key is withholding responsive documents on the basis of privilege. Turn Key's own post-incident investigation into Mr. Bonilla's death falls within the broad scope of discovery and Plaintiff's motion to compel with respect to these requests is granted (subject to the ruling addressing Request Nos. 4 and 7). If responsive documents exist but are being withheld on the basis of privilege, Turn Key must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5).

**Request for Production Nos. 4 and 7**

The next dispute concerns Plaintiff's requests for "claim file materials" and "all communications" with Turn Key's insurer regarding the incident or insurance claim. Turn Key's response brief states that it will produce communications with its insurer under a

protective order. As for the claim file materials, Turn Key resists production on the basis of work-product and/or attorney-client privilege. Turn Key explains that it received notice of a potential lawsuit via Plaintiff's April 26, 2023 document preservation letter, that it did not notify its insurer of any potential claim prior to that date, and that it retained outside legal counsel to investigate and defend the claim upon receipt of the letter. Turn Key therefore asserts "upon information and belief" that no pre-litigation investigation was conducted by Turn Key's insurer.

The work product doctrine, codified in Fed. R. Civ. P. 26(b)(3), protects (1) documents and tangible things, (2) that were prepared in anticipation of litigation or trial, and (3) that were prepared by or for another party or a party's representative. In considering whether insurance claim files are protected under the work product doctrine, many courts have recognized that there is a distinction between first party and third party claims:

> Investigations of first party insurance claims, e.g., claims made by the insured to his or her insurer, typically "do not involve liability investigations.... When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company....There is no initial contemplation of litigation. In investigations of third party claims, e.g., claims arising from conduct of the insured in relation to the injury of another (as the claim can be characterized here), typically the investigation is made in anticipation of claims, which, if denied, likely will lead to litigation.

*Hurtado v. Passmore & Sons, L.L.C.*, No. 10-CV-00625-MSK-KLM, 2011 WL 2533698, at *2 (D. Colo. June 27, 2011) (internal quotation marks and citations omitted). Thus, "files generated during the investigation of third party claims are [often] made in anticipation of litigation and are not discoverable[,]" at least where written notification of a potential claim has been received. *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993);

8

*see also Cornhusker Cas. Co. v. Skaj*, No. 11-CV-110-S, 2012 WL 12541136, at *3 (D. Wyo. Apr. 5, 2012) (finding that claim files generated by insurer before receipt of written notification of third-party's claim were not protected); *Hurtado*, 2011 WL 2533698 at *2 (finding that insurance claim file documents were not protected "[b]ecause there was no actual claim pending when the investigation was undertaken here, nor had Defendant been contacted by Plaintiffs or their counsel about filing a potential claim"); *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (finding that claim file documents were prepared in anticipation of litigation where insurer was "initially engaged because of the very prospect of litigation involving the [third-party] claim").

      Here, the Court does not interpret Plaintiff's discovery requests as seeking any documents, investigations, or communications generated by Turn Key's litigation counsel. As to the claim file materials, the Court is persuaded that documents generated after receipt of Plaintiff's document preservation letter were prepared in anticipation of litigation and therefore fall within the protections of the work product doctrine. However, once again, Turn Key's response is somewhat evasive as it does not clearly state whether there are documents in its possession, custody, or control related to a pre-litigation investigation. To that end, Turn Key is directed to affirmatively state, not merely rest on its information and belief, whether there are responsive documents that pre-date the document preservation notice that are being withheld. Plaintiff's motion to compel with respect to these requests is therefore denied, as set out above.

**Request for Production Nos. 12, 23, and 24**

The final dispute concerns Plaintiff's requests for all documents demonstrating Turn Key's annual revenue derived from the Grady County Law Enforcement Center for the past five years, all budget/expense analyses concerning inmate health care services at the Grady County Law Enforcement Center, and all budget/expense analyses concerning inmate health care services at facilities in Oklahoma for the past five years. Plaintiff contends that evidence of Turn Key's financial worth is relevant to his punitive damages request and that evidence of Turn Key's budgetary trends is relevant to show that systemic understaffing, deficient training, and cost-saving practices played a role in Mr. Bonilla's death. Turn Key resists production on the ground of overbreadth, irrelevance, and undue burden.

Although some limited discovery into Turn Key's financial information is relevant to Plaintiff's claims, the Court finds that these requests are overbroad and not proportionate to the needs of this case, particularly given Turn Key's representation that it does not maintain budget/expense analyses at the facility or state-wide level. *See Bush for Est. of Garland v. Bowling,* No. 19-CV-98-GKF-FHM, 2020 WL 3073092, at *3 (N.D. Okla. June 10, 2020) (denying request to produce financial records associated with medical staffing contract for three-year period because it was "an overly broad request with tenuous relevance"). The motion to compel as to these discovery requests is therefore denied without prejudice and the parties are encouraged to confer in a good faith effort to reasonably narrow these requests.

## CONCLUSION

As set out above, Plaintiff's Motion to Compel [Doc. No. 48] is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 15th day of October, 2024.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE