UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN BONILLA, individually and in his capacity as the personal representative of the Estate of Mario Jasso Bonilla, deceased, <br><br> Plaintiff, <br><br> v. <br><br> JIM GERLACH, et al., <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. CIV 23-1060-R |

## ORDER

Before the Court is Plaintiff's Motion for Sanctions [Doc. No. 87] based on Defendant's alleged failure to preserve video surveillance evidence. The matter is fully briefed and at issue [Doc. Nos. 96, 100].

### RELEVANT BACKGROUND

This 42 U.S.C. § 1983 action arises from Defendants alleged failure to provide Mario Bonilla with adequate medical care while he was incarcerated as a pretrial detainee at the Grady County Law Enforcement Center. Defendants include the Sheriff of Grady County in his official capacity, the Jail Administrator of the Grady County Law Enforcement Center in his official capacity, the Grady County Criminal Justice Authority, and the Board of County Commissioners of Grady County. Plaintiff alleges that Mr. Bonilla fell down a flight of stairs while walking through the facility, jail staff were aware of the fall and observed Mr. Bonilla's medical condition deteriorate over the next several

days, and the jail did not provide adequate medical care. Eight days after the fall, Mr. Bonilla died.

The present motion relates to surveillance video from the Grady County jail during the time of Mr. Bonilla's incarceration. The only video surveillance preserved and produced by Defendants is a set of clips showing the moments immediately before and after Mr. Bonilla's fall. Plaintiff seeks sanctions against Defendants for failing to preserve additional surveillance video of Mr. Bonilla's incarceration, which he contends would have shown the day-by-day degradation of Mr. Bonilla's medical condition.

## STANDARD

Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37(e), which governs the preservation of electronically stored information.[1] This Rule "provides the exclusive remedy for spoliation of electronically stored information ('ESI'), foreclosing reliance on the court's inherent authority." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). The Rule states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

---

[1] Remarkably, Defendants' response brief does not cite to Rule 37(e) or a single case discussing Rule 37(e). As Plaintiff notes, the brief appears to be recycled from a prior brief in a different case. In any event, video surveillance is electronically stored information, and Defendants do not contend otherwise. Accordingly, Rule 37(e) governs Plaintiff's request for spoliation sanctions.

>  (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). "As the party seeking relief, plaintiff bears the burden of demonstrating that the requirements of Fed. R. Civ. P. 37(e) are met." *Bush v. Bowling*, No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *2 (N.D. Okla. Sept. 10, 2020).

## DISCUSSION

The first step in the rule 37(e) analysis is to determine whether the ESI "should have been preserved in the anticipation or conduct of litigation." In other words, the Court must decide "whether and when a duty to preserve arose." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Rule 37(e) does not "create a new duty to preserve" but is instead based on the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." *Id.*[2] The "extent to which a party was on notice that litigation was likely and that the information would be relevant" are important

---

[2] The Tenth Circuit has used different language to describe the standard for imposing spoliation sanctions, albeit in cases not arising under Rule 37(e). Tenth Circuit case law provides that "[s]poliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quotation marks omitted). To the extent there is any difference between these formulations, the Court does not believe it is dispositive in this case.

considerations in determining the existence and scope of the duty to preserve. *Id.* Various facts bear on "whether a party's duty to preserve has been triggered," including "the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary." *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015). Notably, several district courts have concluded "that government defendants should reasonably anticipate litigation when a person dies while in the government's custody." *Bush v. Bowling*, No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *3 (N.D. Okla. Sept. 10, 2020) (citing *Bistrian*, 448 F. Supp. 3d at 469 (E.D. Pa. 2020) (collecting cases)). But ultimately, "the court's decision as to when a party was on notice must be guided by the particular facts of each case." *Zbylski*, 154 F. Supp. 3d at 1164.

In the context of this case, Plaintiff has met its burden of showing that Defendant was on notice that litigation was reasonably likely following Mr. Bonilla's death. Defendants had knowledge that Mr. Bonilla's death occurred several days after he suffered a fall while in Defendants' custody. Defendants obviously recognized that Mr. Bonilla's fall had some significance to his death as they investigated and retained portions of the surveillance video leading up to the fall. Pl.'s Ex. A [Doc. No. 87.1] at 23:4-8; 27:12-22. Defendants were also aware that in-custody deaths are the kind of incident that is likely to trigger litigation. The Grady County Criminal Justice Authority's corporate representatives conceded as much. *See* Pl.'s Ex. A at 209:15-210:9 (testifying that officers are advised that litigation can occur years after an incident and "that's the purpose of incident reporting");

4

Pl.'s Ex. 1 [Doc. No. 100-1] at 151:14-153:3 (testifying that an inmate death is a serious incident and the more serious the incident the more likely the potential for litigation). While there may be situations where the circumstances surrounding a detainee's in-custody death does not put a party on notice that litigation is reasonably foreseeable, the circumstances surrounding Mr. Bonilla's death – several days after a fall and multiple medical visits – were such that Defendants knew or should have known that litigation was likely. *See Bush*, 2020 WL 5423986 at *3 (finding duty to preserve video surveillance related to in custody death where jail's own policies recognized that inmate deaths have the potential of resulting in litigation).

     Defendants argue that, even if there was a duty to preserve some video surveillance, the duty did not extend to any and all video evidence of Mr. Bonilla during his incarceration. That may be so, but what was preserved was insufficient. Despite recognizing the significance of the fall, and being aware that inmate deaths often result in litigation, Defendants retained only a short video clip showing Mr. Bonilla immediately before and after he fell. There is no video of the fall itself, no video showing him in the minutes or hours after the fall, and no video at all of Mr. Bonilla during the following days, including the day he died. The GCCJA's corporate representative testified that, had he been conducting the internal investigation of the incident, he would have preserved the surveillance video showing Mr. Bonilla's medical visit before leaving the building and Mr. Bonilla leaving the building. At the least, video surveillance of Mr. Bonilla's fall, medical visits, and condition the day he died were within the scope of what should have been preserved as potentially relevant to litigation.

5

Having determined that the duty to preserve video surveillance was triggered, the next issue is whether the information was "lost because a party failed to take reasonable steps to preserve it" and if so, whether "it cannot be restored or replaced through additional discovery." Fed. R. 37(e). The video surveillance appears to have been deleted or written over and there is no way to reproduce the video. *See* Pl.'s Ex. A at 159:6-16, 161:22-162:13. Defendants do not genuinely dispute that they failed to take reasonable steps to preserve the video evidence or that the video surveillance cannot be restored.

Where, as here, these foundational requirements are satisfied, Rule 37(e)(1) provides that "upon finding prejudice to another party from loss of the information, [the court] may order measures no greater than necessary to cure the prejudice." Defendants argue that Plaintiff is not prejudiced by the loss of the video because the evidence is not relevant and Plaintiff cannot establish that it would be favorable to his position. This argument strains credulity. Plaintiff's asserts that Defendants were deliberately indifferent to Mr. Bonilla's serious medical needs and that his medical condition visibly deteriorated in the days after his fall. As Plaintiff notes, video surveillance showing Mr. Bonilla's condition would likely have been "the most objective and compelling evidence available to the jury at trial." Pl. Br. at 13. Further, Plaintiff has more than enough extrinsic evidence to demonstrate that the video surveillance would have been favorable to his position. *See* Pl.'s Reply at 4. Regardless, "it is obvious that surveillance footage is relevant in determining the truth." *Bloom v. Toliver*, No. 12-CV-169-JED-FHM, 2015 WL 5344360, at \*7 (N.D. Okla. Sept. 14, 2015).

Plaintiff argues that Defendants intentionally or willfully allowed the video surveillance to be deleted, and an adverse inference instruction as outlined in Rule 37(e)(2) is therefore appropriate. The measures outlined in this subdivision are "severe" and only warranted where "the party that lost the information acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Conduct that is negligence or even grossly negligent is not sufficient. *Id.* Although Defendants should have been aware that litigation was likely, and should have preserved more video that what they did, there is insufficient evidence to support a finding that anyone acted with the intent to deprive an opposing party of the video. The video appears to have been automatically overwritten and while it may have been negligent, or even grossly negligent, to not preserve the evidence, the Court is not able to conclude that such actions were in bad faith such that an adverse inference instruction is warranted.

The final issue is determining what sanction to impose. As previously noted, when sanctions are warranted under Rule 37(e)(1), the Court must order "measures no greater than necessary to cure the prejudice." The advisory committee notes set out some possible options, "including forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Here, permitting limited evidence and argument to the jury explaining that there was additional video surveillance showing Mr. Bonilla during his detention but

Defendants did not preserve the video is an appropriate measure to cure the prejudice to Plaintiff. The parties may present their positions as to the scope of evidence and argument that should be permitted on the subject at the pre-trial conference.

Plaintiff's Motion for Sanctions [Doc. No. 87] is GRANTED as set out above.

IT IS ORDERED this 2nd day of May, 2025.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE